UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARIA ELVIA SMITH,

        Plaintiff,

   v.

MERRICK GARLAND, et al,

        Defendants.

Case No. 23-cv-0490-bhl

### ORDER GRANTING MOTION TO DISMISS

    Federal immigration law allows for the issuance of a visa to "an alien who was the spouse of a citizen of the United States and was not legally separated from the citizen at the time of the citizen's death." 8 U.S.C. § 1151(b)(2)(A)(i). But a visa will only issue if the alien spouse establishes the bona fides of the marriage. In this case, both the United States Citizenship and Immigration Services (USCIS) and Board of Immigration Appeals (BIA) concluded that Plaintiff Maria Elvia Smith failed to demonstrate a bona fide marriage to her late husband, Arlo Henry Smith, Sr., and therefore denied her I-360 Petition. She has appealed to this Court under the Administrative Procedure Act (APA), 5 U.S.C. § 702. Defendants, a collection of government officials, now move to dismiss on the grounds that Mrs. Smith has failed to state a claim. For the following reasons, Defendants' motion will be granted.

### BACKGROUND[1]

    On December 12, 2012, Maria Elvia Smith (*née* Moreno) married Arlo Henry Smith, Sr. in Racine, Wisconsin. (ECF No. 1 ¶¶1, 14.) Less than six months later, Mr. Smith filed a Form I-130 Petition asking the government to classify Mrs. Smith as his immediate-relative spouse. (*Id.* ¶14.) Mrs. Smith concurrently filed a Form I-485 to register as a permanent resident. (*Id.*)

---

[1] These facts are derived from Mrs. Smith's Complaint, (ECF No. 1), the allegations in which are presumed true, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), as well as documents referenced in the Complaint and attached to the Complaint and Defendants' Motion to Dismiss. *See Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim.").

Unfortunately, Mr. Smith died with the applications still pending. (*Id.* ¶15.) Following his death, the I-130 Petition he filed automatically converted to an I-360 Petition. *See* 8 C.F.R. § 204.2(i)(1)(iv). An I-360 Petition (like an I-130 Petition) is a request for the government to classify an alien as the immediate relative of a United States citizen, eligible for lawful admittance or permanent residence status under 8 U.S.C. § 1151. USCIS decides whether to approve the petition. *See* 8 C.F.R. § 103.2(b)(8).

On August 19, 2015, USCIS issued Mrs. Smith a Notice of Intent to Deny (NOID) her requested benefits. (ECF No. 1 ¶19.) A NOID is not a final decision. Rather, it is a means through which USCIS communicates an intent to deny benefits while granting the petitioner an opportunity to respond. *See* 8 C.F.R. §§ 103.2(b)(8)(iii), (iv). Here, the NOID informed Mrs. Smith that USCIS doubted her marriage's bona fides because of her continued relationship with her ex-husband, Francisco Javier Hernandez-Rico, whom she divorced on May 25, 2001, in Mexico. (ECF No. 1 ¶¶19, 23.) According to the NOID, about a year after their divorce, Mrs. Smith and Hernandez-Rico "attempted to enter the United States at the Hartsfield International Airport in Atlanta, Georgia," where they inaccurately "presented [themselves] as a married couple." (ECF No. 14-1 at 3.) Two years later, USCIS found the ex-spouses had again presented themselves as a married couple when applying for nonimmigrant visas at the American Consulate in Mexico City. (*Id.*) The NOID also cited evidence showing that, four months *before* she married Mr. Smith, Mrs. Smith had "signed a lease to share an apartment with [Hernandez-Rico] and" the child they had together. (*Id.* at 4.) Four months after Mr. Smith's death, an immigration officer noticed Mrs. Smith's name (alongside Hernandez-Rico's and their son's) on the apartment mailbox. (*Id.* at 3.) And, as of July 13, 2015, Mrs. Smith herself confirmed that she lived with Hernandez-Rico and her son. (*Id.* at 4.) Based on this information, USCIS preliminarily concluded that Mrs. Smith had not established a bona fide marriage to Mr. Smith because she "continued to have a close relationship with [her] former husband during [her] marriage to [Mr. Smith] and long after [her] nominal divorce." (*Id.*)

Mrs. Smith responded to the agency's findings. She first submitted a sworn affidavit, denying that she and Hernandez-Rico presented as a married couple at the Hartfield International Airport or that they applied for a visa together in 2004. (ECF No. 1 ¶27.) Hernandez-Rico submitted his own sworn affidavit, attesting to the same. (*Id.* ¶28.) Mrs. Smith also produced a funeral home bill showing that she paid for Mr. Smith's funeral expenses; various declarations

attesting to her marriage's bona fides; correspondences addressed to her and Mr. Smith; a joint tax return the couple filed in 2012; and a tax return she filed in 2014 as Mr. Smith's surviving spouse. (*Id.* ¶34.) This added to her prior submissions, including documents showing that she was a beneficiary of Mr. Smith's pension plan; had received survivor benefits; took Mr. Smith to doctor visits; and was a joint tax return filer with him in 2013. (*Id.* ¶33.)

Despite Mrs. Smith's efforts, USCIS maintained its position and denied her petition. On April 4, 2019, it issued six-page decision, concluding that she had "not met [her] burden by the preponderance of the evidence that [she] and Mr. Arlo Smith were in a bona-fide marriage for immigration purposes." (*Id.* at 66.) USCIS refused to fully credit Mrs. Smith's or Hernandez-Rico's affidavits because both had a history of "provid[ing] false and misleading information to USCIS officers in hopes of obtaining immigration benefits." (*Id.*)[2] This adverse credibility determination proved fatal to Mrs. Smith's petition. As USCIS put it: "While some documents showed [Mrs. Smith was] the beneficiary of [Mr. Smith's] Post-Retirement Beneficiary Pension Plan and that [she] received survivor benefits, that [she] accompanied [Mr. Smith] to medical appointments, [and the couple] jointly filed tax returns for 2013, these documents alone [did] not establish a bona-fide marriage especially considering that [Mrs. Smith had] provided false and misleading information to U.S. immigration officers on at least two occasions." (*Id.*) Thus, "[t]he evidence [Mrs. Smith] submitted in response to the NOID did not overcome the derogatory information presented in the NOID." (*Id.*)

Mrs. Smith appealed USCIS's decision to the BIA on May 2, 2019. (*Id.* ¶35.) It took four years, but finally the BIA issued a three-paragraph decision, affirming USCIS "for the reasons stated in [USCIS's] decision and" the NOID. (*Id.* at 85-86.) According to the BIA:

> Upon our de novo review of the evidence of record, we agree with [USCIS] that the evidence submitted in support of the instant visa petition does not demonstrate that the burden of proof has been met. While the petitioner argues that a preponderance of the evidence

---

[2] After considering her rebuttal evidence, USCIS maintained that Mrs. Smith and Hernandez-Rico presented as a married couple at the Atlanta International Airport in 2002. (ECF No. 1 at 65.) But USCIS withdrew its preliminary conclusion that Mrs. Smith and Hernandez-Rico applied together for visas at the American Consulate in Mexico City in 2004. (*Id.* at 66.) Mrs. Smith suggests that this split decision undermines the agency's credibility. Invoking the common law maxim "*falsus in uno, falsus in omnibus*," she contends that USCIS is not trustworthy because it "admits that it made a factual claim in the NOID that turn[ed] out to [be] a total fabrication." (ECF No. 17 at 7-8.) But the entire purpose of the NOID is to give the petitioner a chance to rebut an agency's initial conclusion. A successful rebuttal of a part of the NOID does not render the entire NOID discreditable. If anything, accepting at least some of a petitioner's argument on rebuttal suggests the kind of thoughtful, self-critical review necessary for the immigration system to properly function.

> standard has been met with evidence such as joint tax returns, life insurance, letters, and beneficiary payments, we disagree. . . . [I]n this case, the evidence of record, including the evidence submitted in response to the NOID, is insufficient to overcome the derogatory information detailed in the NOID of the petitioner's continued cohabitation with her prior spouse.

(*Id.*) Mrs. Smith timely appealed the BIA's decision to this Court on April 14, 2023.

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the APA, an agency is generally liable for misconduct only if it acts arbitrarily or capriciously. 5 U.S.C. § 706(2)(A). Thus, to survive a motion to dismiss, something in the complaint or administrative record must raise a plausible inference that the agency action in question was arbitrary or capricious. Agency action is arbitrary and/or capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## ANALYSIS

Mrs. Smith asserts three claims: (1) USCIS and the BIA violated the APA through action that was arbitrary, capricious, an abuse of discretion, and not in accordance with law; (2) USCIS and the BIA violated the APA by acting without observance of procedure required by law; and (3) USCIS and the BIA violated the Fifth Amendment's Due Process Clause. (ECF No. 1 ¶¶39-72.) Defendants have moved to dismiss. Because Mrs. Smith's Complaint does not state any viable claims, that motion will be granted.

## I. The Complaint Does Not Plausibly Allege that USCIS and/or the BIA Acted Improperly.

Mrs. Smith first alleges that the agencies violated 5 U.S.C. § 706(2)(A), which requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." She pinpoints three possible errors: (1) the agencies wrongly concluded that Mrs. Smith continued to cohabit with Hernandez-Rico even during her marriage to Mr. Smith; (2) "BIA did not provide a single, cogent reason . . . why the marriage between [Mr. and Mrs. Smith] was not bona fide"; and (3) USCIS improperly withheld derogatory information. (ECF No. 1 ¶¶39-62.) Any one of these errors, she argues, is sufficient to state a claim under the APA. The Court will address them in turn.

### A. The Cohabitation Allegation.

Mrs. Smith believes the "BIA's decision is wrought with error" because it adopts USCIS's charge that she "continued to cohabit with [Hernandez-Rico] even during her marriage to Mr. Smith." (*Id.* ¶40.) This assertion misstates the agencies' rulings. Neither USCIS nor the BIA found that Mrs. Smith resided with Hernandez-Rico "during her marriage to Mr. Smith." The NOID stated: "[Mrs. Smith] continued to have a close relationship with [Hernandez-Rico] during [her] marriage to [Mr. Smith] and long after [her] nominal divorce." (ECF No. 14-1 at 4.) USCIS stated in its decision that evidence showed Mrs. Smith and Hernandez-Rico had a "history of residing together with [their] child in common in Wisconsin over the years after [their] divorce from each other and during" *Hernandez-Rico's* subsequent marriage. (ECF No. 1 at 66.) And the BIA's affirmance merely noted Mrs. Smith's "continued cohabitation with [Hernandez-Rico]." (*Id.* at 86.) In short, neither agency ever necessarily found that Mrs. Smith and Hernandez-Rico cohabited *during* the former's marriage to Mr. Smith. Rather, the BIA and USCIS observed that Mrs. Smith and Hernandez-Rico lived together at various times after their 2001 divorce, a factual proposition that Mrs. Smith admits is true. (*Id.* at 34.) The agencies' reference to established facts in the record is not arbitrary or capricious.

### B. The Bona Fide Marriage Conclusion.

Both USCIS and the BIA concluded that Mrs. Smith failed to establish a bona fide marriage to Mr. Smith by a preponderance of the evidence, but Mrs. Smith argues that neither agency provided a valid rationale for reaching that conclusion. She did, after all, submit evidence to rebut the NOID's preliminary inference that her continued cohabitation with Hernandez-Rico undercut

her claim to a bona fide marriage with Mr. Smith. In fact, both she and Hernandez-Rico swore that they "cohabited platonically in the United States for the sake of their common son." (ECF No. 1 ¶41.) Nothing in either agency decision directly addresses why this is not a plausible explanation.

But an agency need not "'write an exegesis on every contention' raised." *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (quoting *Rashiah v. Ashcroft*, 388 F.3d 1126, 1130 (7th Cir. 2004)). It "need only 'announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Id.* (quoting *Rashiah*, 388 F.3d at 1130-31). In this case, the agencies rejected Mrs. Smith's explanation not because it was inherently outlandish but because they found that she and Hernandez-Rico "lack[ed] credibility." USCIS explained its reasons for reaching this determination, noting that both had previously "provided false and misleading information to USCIS officers in hopes of obtaining immigration benefits." (ECF No. 1 at 65-66.) This credibility finding would violate the APA only if it was implausible or delivered from left field. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) ("[W]e will uphold a decision . . . if the agency's path may be reasonably discerned."); *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."). Nothing in Mrs. Smith's Complaint plausibly alleges the agencies' credibility determinations fell outside a zone of reasonableness. The very record she attached to her complaint shows she made inconsistent statements. At one time, she told USCIS that she had *never* traveled with Hernandez-Rico after their divorce. (ECF No. 1 at 37.) On another occasion, she admits that she and Hernandez-Rico traveled to Atlanta together one year after their divorce was finalized. (*Id.* at 33.) This contradiction establishes at least "a 'rational connection between the facts found and the [credibility] choice [the agencies] made.'" *Motor Vehicle Mfrs.*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

The agencies also did not, as Mrs. Smith alleges, apply the wrong standard and burden of proof when assessing her marriage's bona fides. (ECF No. 1 ¶44.) The initial burden to establish a bona fide marriage falls on the petitioner seeking benefits, not the agency. *See Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). "If the petitioner's application does not demonstrate by a preponderance of the evidence that the petitioner and beneficiary intended to establish a life

together, the . . . petition will be denied." *Wong v. Mayorkas*, No. 19-CV-8427, 2023 WL 2751118, at *3 (N.D. Ill. Mar. 31, 2023). USCIS can also deny a petition under 8 U.S.C. § 1154(c) if it finds "substantial and probative evidence" of marriage fraud. 8 C.F.R. § 204.2(a)(1)(ii). "That determination is separate and distinct from the agencies' determination regarding whether the petitioner has sustained [her] burden [of] establishing a bona fide marriage." *Cassell v. Napolitano*, No. 12-CV-9786, 2014 WL 1303497, at *10 (N.D. Ill. Mar. 31, 2014).

Mrs. Smith argues that USCIS did not produce "substantial and probative evidence" of marriage fraud, so the BIA should have reversed. But neither USCIS nor the BIA accused Mrs. Smith of marriage fraud. While the NOID did use language suggesting USCIS *might* make a marriage fraud finding, the agency's actual decision never went that far—and it did not need to. The BIA, similarly, did not cite marriage fraud as the basis for its affirmance. Instead, both agencies concluded that Mrs. Smith did not meet her "burden by the preponderance of the evidence that [she] and [Mr. Smith] were in a bona-fide marriage for immigration purposes." (ECF No. 1 at 66, 85-86.) That was the proper burden applied to the proper standard.

C. The Derogatory Information.

Mrs. Smith next alleges that USCIS acted arbitrarily and capriciously when it provided only a three-sentence summary of the derogatory information it ultimately used, in part, to make its adverse credibility determination. (ECF No. 1 ¶¶49-53.) Under 8 C.F.R. § 103.2(b)(16)(i), if a "decision will be adverse to the . . . petitioner and is based on derogatory information . . . of which the . . . petitioner is unaware, [she] shall be advised of this fact and offered an opportunity to rebut the information and present information in [her] behalf before the decision is rendered." The regulation's next paragraph makes clear that an eligibility determination may "be based only on information contained in the record of proceeding which is disclosed to the . . . petitioner." *Id.* at (ii).

Mrs. Smith's position is that USCIS denied her the opportunity to inspect the record allegedly created during her detention at the Atlanta International Airport in 2002 and this failure to disclose the report meant the agency could not rely on it in making its eligibility determination. Of course, USCIS *did* base its eligibility determination on information contained in the 2002 report—it cited the report as evidence to undermine Mrs. Smith's and Hernandez-Rico's credibility. (ECF No. 1 at 65-66.) But Section 103.2 "does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds." *Ogbolumani*, 557 F.3d at 735. Disclosure,

under the statute, does not mean production; a summary can suffice. *See Ghaly v. INS*, 48 F.3d 1426, 1434-35 (7th Cir. 1995). The question is whether the summary provides notice to the petitioner of the grounds USCIS intends to employ to deny her petition and affords her "a full opportunity to rebut the information on which" the decision will be based. *Id.* at 1435. In *Ghaly*, the Seventh Circuit upheld even a single-sentence summary where the summary made the agency's "intentions plain[] and clear[]" and the petitioner submitted evidence evincing an understanding of the agency's position and an intent to rebut it. *Id.*

Mrs. Smith's response to the NOID indicates that she understood the significance of the derogatory information USCIS uncovered. Indeed, the affidavit she submitted in response directly disputed the NOID's allegation that she and Hernandez-Rico presented themselves as a married couple at Atlanta International Airport in 2002. (ECF No. 1 at 33.) That the agencies elected not to credit her statements in light of her prior untruthfulness does not establish a violation of the applicable regulations. Her complaint, therefore, fails to state a plausible claim to relief on this issue. *See Mazinda v. U.S. Dep't of Homeland Sec.*, No. 1:15-CV-00752-SEB-TAB, 2016 WL 6156224, at *12 (S.D. Ind. Sept. 29, 2016).

**II.     The Complaint Does Not Plausibly Allege that USCIS and the BIA Acted Without Observance of Procedure Required by Law.**

Mrs. Smith's second claim contends the agency actions were taken "without observance of procedure required by law" within the meaning of 5 U.S.C. § 706(2)(D). She argues the agencies improperly ignored eight pieces of evidence she submitted in support of her claim. (ECF No. 1 ¶64.)[3] This evidence included:

- "A funeral-home bill addressed to [Mrs. Smith,] showing that the funeral expenses for Mr. Smith have been paid";
- "A declaration by Ma. del Socorro Sandoval attesting to the bona fides of the marriage between [Mr. and Mrs. Smith]";
- "A joint declaration by Gustavo Ramirez and Lisbeth Soto attesting to the bona fides of the marriage between [Mr. and Mrs. Smith]";
- "A declaration by Arlo Henry Smith, Jr., attesting to the bona fides of the marriage between his late father and [Mrs. Smith]";

---

[3] Mrs. Smith also reprises her "marriage fraud" argument, claiming that the agencies lacked "substantial and probative" evidence indicative of marriage fraud. (ECF No. 1 ¶¶65-67.) As already discussed, the agencies never concluded that Mrs. Smith committed marriage fraud, so this argument has no merit.

- "A declaration by Laura Ann Smith, Smith, Jr.'s wife, attesting to the bona fides of the marriage between her late father-in-law and [Mrs. Smith]";
- "Copies of correspondence addressed to [Mr. and Mrs. Smith], jointly";
- "A joint tax return for 2012 for [Mr. and Mrs. Smith]"; and
- "Tax returns from 2014 that [Mrs. Smith] filed as Mr. Smith's surviving spouse".

(*Id.* ¶34.)

"A claim that [the BIA] has completely ignored the evidence put forth by a petitioner is an allegation of legal error." *Perez-Fuentes v. Lynch*, 842 F.3d 506, 512 (7th Cir. 2016) (quoting *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008)). But a failure to mention evidence is not the same as ignoring that evidence. The BIA "is not required to mention each piece of evidence in its decision; [it] need only *consider* the evidence." *Id.* Nothing in the Complaint or record before this Court suggests that USCIS and the BIA did not satisfy this minimal requirement.

Out of the eight pieces of evidence Mrs. Smith alleges the agencies ignored, only the declarations went completely unmentioned across the NOID, USCIS decision, and BIA affirmance. (*See* ECF No. 14-1 at 2-3.) But failure to *mention* is not failure to *consider*. USCIS attested to "a careful and complete review of the record and testimony." (ECF No. 1 at 66.) Likewise, the BIA confirmed "de novo review of the evidence of record." (*Id.* at 85-86.) The complaint does not plausibly allege that the agencies lied when they announced their comprehensive reviews; it merely emphasizes that USCIS's decision did not specifically mention eight individual pieces of evidence. (*Id.* ¶34.) But, of course, the agency was not required to cite every iota of evidence. The failure to reference a handful of declarations is not, therefore, in and of itself, enough to state a claim for relief under Section 706(2)(D). *See Hassan-McDonald v. Mayorkas*, No. 21-C-3931, 2022 WL 170045, at *4 (N.D. Ill. Jan. 19, 2022) ("While the BIA did not discuss all of the evidence before it in detail, it cannot be said that it 'ignored' the evidence Plaintiff adduced in support of her petition.").

**III.   USCIS and the BIA Did Not Violate the Fifth Amendment's Due Process Clause.**

Mrs. Smith's final claim is that the agencies' decisions violated her "fundamental liberty interest in family and a home in the United States," in contravention of the Fifth Amendment Due Process Clause. (ECF No. 1 ¶71.) But no such fundamental liberty interest exists. In *Kerry v. Din*, 576 U.S. 86, 88 (2015), a plurality of the United States Supreme Court rejected the notion that non-citizens have any constitutional right to live in the United States with their citizen spouses.

The Seventh Circuit has "avoided taking a position on this issue in the past." *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019). But it is enough, for present purposes, that non-citizens have no historically recognized right to reside in the United States with their citizen spouses, much less reside in the United States after their citizen spouses have died. In the substantive due process realm, courts only protect rights and liberties "so rooted in the traditions and conscience of our people as to be ranked fundamental." *Reno v. Flores*, 507 U.S. 292, 303 (1993) (quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)). Surely a right that a plurality of the Supreme Court denies exists and that the Seventh Circuit refuses to recognize is not "rooted in the traditions and conscience of our people." Other courts have reached similar conclusions. *See Bright v. Parra*, 919 F.2d 31, 33 (5th Cir. 1990) (holding that a citizen "has no constitutional right to have her alien spouse remain in the United States") (citations omitted); *Almario v. Att'y Gen.*, 872 F.2d 147, 151 (6th Cir. 1989) ("[T]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in this country."); *Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663, 680 (E.D. Va. 2019), *aff'd*, 836 F. App'x 131 (4th Cir. 2020) ("[I]n the substantive due process context, courts have rejected the theory that an individual pursuing an I-130 petition has a fundamental right to reside in the United States with his non-citizen relatives[.]") (citations omitted).

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 13), is **GRANTED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 15, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge